**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABLA ABDEL BASET YOUSSEF, | ) |
| PLAINTIFF, | ) ) ) |
| V. | ) CIVIL ACTION NO: 1:17-cv-02638 |
| | ) ) |
| THE EMBASSY OF THE UNITED ARAB EMIRATES, | ) ) ) |
| And | ) ) |
| THE UNITED ARAB EMIRATES, | ) ) |
| DEFENDANTS. | ) |

**REPLY MEMORANDUM IN SUPPORT OF**
**SPECIALLY-APPEARING DEFENDANTS**
**THE EMBASSY OF THE UNITED ARAB EMIRATES AND**
**THE UNITED ARAB EMIRATES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**AND MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1
II. PROCEDURAL AND FACTUAL BACKGROUND ......................................................... 1
III. ARGUMENT ....................................................................................................................... 3
    A. The Purported Withdrawal of the Jury Demand Is Not Sufficient To Moot the Motion to Strike. .................................................................................................. 3
    B. The Motion to Dismiss Was Not Procedurally Defective, as Plaintiff Conflates a 12(b)(1) Motion with a 12(b)(6) Motion and Fails To Properly Consider the 12(b)(2) Motion. ............................................................................... 4
    C. There Is No Basis for the Court to Strike Any Facts or Exhibits on Which the UAE Relies. ........................................................................................................ 6
    D. The UAE Enjoys Sovereign Immunity in this Case, as the UAE Was Not Engaged in Commercial Activity. ............................................................................ 7
        1. Plaintiff Is Unable To Demonstrate that the Activities of the Cultural Division Are Commercial in Nature. ............................................ 7
        2. Plaintiff's Overly Rigid Application of *El-Hadad* Fails To Refute the Fact that Plaintiff's Employment Involved Discretionary Duties and that Her Work Was Not a Commercial Activity. ................................ 9
    E. The DCHRA Claim Should Be Dismissed as a Matter of Law and Plaintiff Fails To Provide a Compelling Argument to the Contrary. ................................... 12
IV. CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cannon v. District of Columbia*,
   717 F.3d 200 (D.C. Cir. 2013) ................................................................................................. 7

*Dahman v. Embassy of Qatar*,
   No. 17-2628, 2018 U.S. Dist. LEXIS 124759 (D.D.C. July 26, 2018) .............................. 7, 11

*El-Hadad v. United Arab Emirates*,
   216 F.3d 29 (D.C. Cir. 2000) ................................................................................................... 9

*El-Hadad v. Embassy of the United Arab Emirates*, No. 96-1943, 2006 U.S. Dist.
   LEXIS 21491 (D.D.C. Mar. 29, 2006) .................................................................................... 8

*El-Hadad v. United Arab Emirates*,
   496 F.3d 658 (D.C. Cir. 2007) ....................................................................................... 7, 9, 10

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir 1987) .................................................................................................. 5

*Kato v. Ishihara*,
   360 F.3d 106 (2d Cir. 2004) .................................................................................................7, 8

*Mar. Int'l Nominees Establishment v. Republic of Guinea*,
   693 F.2d 1094 (D.C.Cir.1982) .............................................................................................5, 6

*Nikbin v. Islamic Republic of Iran*,
   471 F. Supp. 2d 53 (D.C. Cir. 2007) ........................................................................................ 5

*Ord v. District of Columbia*,
   587 F.3d 1136 (D.C. Cir. 2009) ............................................................................................4, 5

*Paul v. United States*,
   371 U.S. 245 (1963) ............................................................................................................... 12

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ................................................................................................................. 7

*Sturdza v. United Arab Emirates*,
   11 A.3d 251 (D.C. 2011) ....................................................................................................... 13

*Webster v. Spencer*,
   318 F. Supp. 3d 313 (D.D.C. 2018) ...................................................................................3, 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

22 U.S.C.
- § 4302..................................................................................................................13
- § 4303..................................................................................................................13
- § 4304.............................................................................................................13, 14
- § 4305.............................................................................................................13, 14
- § 4307.............................................................................................................13, 14

28 U.S.C.
- § 1330(a).................................................................................................................3
- District of Columbia Human Rights Act ........................................................12, 14

Foreign Missions Act of 1982..................................................................................13

Foreign Sovereign Immunities Act................................................................. *passim*

International Center Act............................................................................................13

**Other Authorities**

Fed. R. Civ. P.
- R. 12(b)(1)....................................................................................................4, 5, 6
- R. 12(b)(2)....................................................................................................4, 5, 6
- R. 12(b)(6)............................................................................................................4
- R. 12(c) ................................................................................................................4
- R. 12(d) ................................................................................................................4
- R. 15(a)(2)............................................................................................................4

I.     INTRODUCTION

As the Embassy of the United Arab Emirates and the United Arab Emirates (together, the "UAE")[1] demonstrated in their Motion to Dismiss and Motion to Strike (ECF No. 30), they are protected from civil suit on the basis of sovereign immunity, codified as the Foreign Sovereign Immunities Act ("FSIA").  In her Opposition, Plaintiff Abla Abdel Baset Youssef mischaracterizes previously alleged facts (or asserts facts not pleaded in her complaint) and misconstrues applicable case law in an effort to convince this Court that her employment comes within the commercial activity exception and therefore the motion to dismiss should be denied.  This effort comes short.  Plaintiff's allegations are insufficient to show that the Cultural Division's activities and Plaintiff's own employment functions as the Employees Affairs (Personnel) Officer were commercial in nature.  Accordingly, this Court should grant the UAE's motion and dismiss this action.

II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Opposition misrepresents both the facts of this case and its procedural history. Plaintiff asserts that the UAE failed to answer the service of process, leading to an entry of default.  *See* ECF No. 31-1 at 2 (citing ECF No. 20, dated April 25, 2018).  As Plaintiff tacitly concedes, however, she did not properly serve the UAE with process until May 10, 2018.  *Id.* (citing ECF Nos. 25 and 26, dated May 10, 2018).  Plaintiff acknowledges that this Court granted the UAE's motion to vacate entry of default, but states that the Court refused to quash service of process.  *Id.*  Plaintiff omits to mention, however, that the motion to quash service of process

---

[1] As stated in the UAE's Motion (ECF No. 30-1 at n.1), the UAE is making a special appearance in this case solely for the purpose of moving to quash service of process and to vacate an entry of default.  The UAE does not waive service or immunity under the Foreign Sovereign Immunity Act of 1976, Pub. L. 94-583, 90 Stat. 2891, and reserves and maintains all rights afforded to it as a sovereign state.

(directed at an earlier, faulty, service attempt) was denied *as moot*, in part because Plaintiff herself admitted that earlier service was insufficient.  *See* ECF No. 27 at 7.

Plaintiff then provides a lengthy recitation that largely regurgitates the allegations in her Complaint.  *See* ECF No. 31-1 at 6-8.  Plaintiff's Opposition is riddled with material inaccuracies and factual omissions, as well as assertions of facts that are not in the Complaint.  The UAE is prepared to respond to these assertions at the appropriate time.  For the purposes of the UAE's motion, the key relevant facts—all of which the Court can consider when ruling on this motion—are as follows:

- Plaintiff served as the Employees Affairs (Personnel) Officer at the Cultural Division from 2001 until January 2016.  *See* Compl. ¶ 12.  Plaintiff's position was in the Academic Office, and she reported directly to the Cultural Attaché.  *Id*. ¶ 14.  Plaintiff's duties involved not only assisting the Cultural Attaché in the performance of her duties promoting the academic achievement of UAE citizens in the U.S.A., but also managing a number of workplace issues to ensure that the Division was capable of performing its diplomatic and academic functions.  *See* ECF No. 31-1at 6.

- Plaintiff enjoyed employment benefits common to other Embassy employees, including time off not only during holidays observed in the United States, but also those observed in the UAE.  *See* ECF No. 30-6, Ex. D (2001 Employment Agreement); ECF No. 30-7, Ex. E (2011 Employment Agreement).[2]

- Plaintiff is an Egyptian national, and for the entirety of her tenure with the Cultural Division was only allowed to work in the United States because of an A-2 work visa obtained by the Embassy.  *See* ECF No. 31-1 at 20-21.  A-2 visas are available only to "foreign government officials" who "engage solely in official activities for that government [which are] governmental in character or nature, [and not] of a commercial nature."  ECF No. 30-8, Exhibit F (Visas for Diplomats and Foreign Government Officials, *available at*

---

[2] With her Opposition, Plaintiff submitted a copy of the translation of the employment agreement dated February 7, 2011.  *See* ECF No. 31-2, Ex. 1.  The translation submitted by Plaintiff is neither accompanied by the signed, Arabic original nor contains a certification of translation.  By contrast, the UAE submitted a translation of the February 2011 agreement (as well as of the earlier 2001 agreement) accompanied by the signed, Arabic original employment agreement with a notarized certification of translation.  The UAE therefore does not necessarily agree that the translation submitted by Plaintiff as Exhibit 1 (ECF No. 31-2) is accurate.

2

      https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html).[3]

- The UAE employed Plaintiff under a one-year contract subject to renewal. ECF No. 31-1 at 7. Thus, virtually every year Plaintiff was employed by the Cultural Division, she signed an Employment Agreement ("Agreement") describing the at-will nature of her employment and clarifying that the term of her employment was limited to one year. *Id.*

- Since 2013, the total number of the Embassy's Cultural Division staff has been downsized by nearly one-third. *See* Compl. ¶ 30. Despite the fact that Plaintiff's position was marked for downsizing and she turned 65 years old in 2014, the Embassy renewed Plaintiff's one-year contract in December 2013 (for the calendar year 2014) and December 2014 (for the calendar year 2015). *See id.* ¶¶ 20-21. Plaintiff's position was identified for termination following additional budget cuts in 2015 and Plaintiff was given notice that her contract would not be renewed for 2016. *See id.* ¶ 32.

- Plaintiff's position was eliminated and it no longer exists. Plaintiff's duties were combined with those of another position, and her responsibilities were transferred to another employee already employed by the Cultural Division. *See* Compl. ¶ 29.

III.    <u>ARGUMENT</u>

    A.    <u>The Purported Withdrawal of the Jury Demand Is Not Sufficient To Moot the Motion to Strike.</u>

Plaintiff purports to withdraw her legally improper demand for a jury trial in a footnote, "pursuant to 28 U.S.C. § 1330(a)," and asserts that the UAE's motion to strike is therefore "moot." ECF 31-1 at 1 n.1. This footnote is neither sufficient to withdraw a jury demand, nor to moot a pending motion to strike the jury demand. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Webster v. Spencer*, 318 F. Supp. 3d 313, 319 (D.D.C. 2018) (internal quotation marks and citation omitted). Nor does section

---

[3] As the U.S. State Department explains, "[d]iplomats and other foreign government officials traveling to the United States to engage solely in official duties or activities on behalf of their national government must obtain A-1 or A-2 visas prior to entering the United States … . To qualify for an A-1 or A-2 visa, you must be traveling to the United States on behalf of your national government to engage solely in official activities for that government. The specific duties or services that will be performed must be governmental in character or nature, as determined by the U.S. Department of State, in accordance with U.S. immigration laws. Government officials traveling to the United States to perform non-governmental functions of a commercial nature, or traveling as tourists, require the appropriate visas and do not qualify for A visas." *Id.*

1330(a) provide a mechanism for doing so; it simply vests federal district courts with jurisdiction over suits involving foreign states where the state is not entitled to sovereign immunity. As the jury demand is contained within Plaintiff's Complaint, abandoning that demand requires amending the Complaint. To amend the Complaint, Plaintiff would have to file an amendment to the Complaint either with consent from the UAE or permission from this Court. *See* Fed. R. Civ. P. 15(a)(2).

For this reason, Plaintiff's footnote is not a proper or adequate way to amend her Complaint to remove the jury demand. Because Plaintiff concedes she cannot demand a jury trial but has not amended the Complaint to withdraw the demand, the Court should hold Plaintiff to her concession and grant the UAE's motion to strike the jury demand.

    B.    <u>The Motion to Dismiss Was Not Procedurally Defective, as Plaintiff Conflates a 12(b)(1) Motion with a 12(b)(6) Motion and Fails To Properly Consider the 12(b)(2) Motion.</u>

In her Opposition, Plaintiff repeatedly conflates the procedural mechanisms for this motion to dismiss, seeking to characterize the entire motion as being based on Rule 12(b)(6). *See, e.g.* ECF No. 31-1 at 10-13.

Plaintiff asserts that "facts outside the record asserted by Defendants must be disregarded by this Court or th[is] motion should be treated as one for summary judgment and not as a motion to dismiss." *Id.* at 10. That principle, however, applies only to motions under Rule 12(b)(6). With respect to those motions, Federal Rule of Civil Procedure 12(d) does provide that if matters outside the pleadings are presented to the court in 12(b)(6) motions, then the motion should be treated as summary judgment. *See* Fed. R. Civ. P. 12(d). But "Rule 12(d)'s conversion mechanism applies *only* to motions under Rule 12(b)(6) or 12(c)." *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (emphasis added).

4

This rule does *not* provide such restrictions for 12(b)(1) or 12(b)(2) motions. *Id.* ("[T]he impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled.") (internal quotation marks and citation omitted). Rather, a court may choose to rule on the motion to dismiss on the basis of 12(b)(1) or (12)(b)(2), and in so doing, may rely on matters outside of the pleadings. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir 1987) (quoting *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 362-63 (D.C. Cir. 1982)) (asserting that "it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'"). Such matters to be considered include the complaint and the materials included in motion to dismiss, so long as that material is admissible for that purpose. *See Ord*, 587 F.3d at 1140 (considering the plaintiff's complaint and arguments under motion to dismiss appropriately included). As set forth in the UAE's initial brief and also in Section III.C below, all of the matter the UAE has cited is admissible for this purpose.

Plaintiff's assertion that the UAE's motion to dismiss must be denied because it refers to facts alleged outside of her Complaint lacks a basis in law and ignores this Court's right to consider facts presented to the Court in support of the UAE's motion to dismiss.

Plaintiff also asserts that the UAE makes "no argument" with respect to its motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). ECF No. 31-1 at 2 n.2. This argument misunderstands the statutory scheme. "The 'interlocking provisions' of [the FSIA] compress subject-matter jurisdiction and personal jurisdiction into a single, two-pronged inquiry: (1) whether service of the foreign state was accomplished properly, and (2) whether one of the statutory exceptions to sovereign immunity applies." *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 59 (D.C. Cir. 2007) (quoting *Mar. Int'l Nominees Establishment v. Republic of*

*Guinea*, 693 F.2d 1094, 1099 (D.C. Cir. 1982)).  As the D.C. Circuit explained, "the absence of immunity is a condition to the presence of subject matter jurisdiction … . [And] a lack of subject matter jurisdiction also deprives the court of personal jurisdiction … ."  *Mar. Int'l Nominees Establishment*, 693 F.2d at 1099.  Because the UAE is entitled to sovereign immunity under the FSIA, personal jurisdiction over the UAE is lacking.

        C.        <u>There Is No Basis for the Court to Strike Any Facts or Exhibits on Which the UAE Relies.</u>

Plaintiff requests that this Court strike most of the exhibits and factual statements contained in the UAE's motion.  *See* ECF No. 31-1 at 12.  Her request ignores the fact that the court may consider matters outside of the pleadings when ruling on 12(b)(1) and 12(b)(2) motions.  This Court therefore may consider these facts and exhibits when evaluating the UAE's motion to dismiss on the basis of sovereign immunity.

Plaintiff argues that this Court may not consider the material published on the official UAE government websites.  *Id.* at 13-14.  As the UAE demonstrates in its motion, however, this material is appropriate for judicial notice.  *See* ECF No. 30-1 at 3 n.2 (citing cases).  For example, the website that describes the mission and the structure of the Cultural Division is maintained by the UAE government, is publicly accessible to anyone interested in the Cultural Division's operations, bears the official emblem of the UAE, and contains public statements by high-level UAE government officials, including the Ambassador to the United States and the Minister of Higher Education.  *See* ECF 30-1, Exs. A, B.

Plaintiff cites no authority for her argument that the only government websites of which a court may take judicial notice are those of the U.S. Government.  Further, Plaintiff's unfounded speculation that the UAE Government would "manipulate or alter" the information on the websites to benefit the UAE's arguments, *see* ECF No. 31-1 at 14, is completely unsubstantiated

6

and inappropriate, and contrary to settled principles of international comity. Nor is there any support for Plaintiff's contention (*see id.*) that only material available on public websites of "uninterested" government agencies may be subject to judicial notice. In *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013), the court took judicial notice of a District of Columbia Government website even though the District of Columbia was a party to the case. Plaintiff's request to strike is also inconsistent with Plaintiff's own argument. In fact, one exhibit that Plaintiff requests be stricken from the record is a U.S. Government website. *See* ECF No. 30-8; ECF No. 30-1 at 12.

Plaintiff's request that the Court strike these exhibits from the record should be denied.

D. The UAE Enjoys Sovereign Immunity in this Case, as the UAE Was Not Engaged in Commercial Activity.

Plaintiff misunderstands the nonbinding two-step test the D.C. Circuit set forth in *El-Hadad v. United Arab Emirates*, 496 F.3d 658 (D.C. Cir. 2007), for determining when a foreign Embassy's employment of non-diplomatic personnel falls within the commercial activity exception of the FSIA. This case is distinct from *El Hadad*, and under the D.C. Circuit's logic, sovereign immunity applies here to bar Plaintiff's suit.

1. Plaintiff Is Unable To Demonstrate that the Activities of the Cultural Division Are Commercial in Nature.

Plaintiff attempts to side-step the reasoning of the Second Circuit in *Kato v. Ishihara*, 360 F.3d 106 (2d Cir. 2004), by arguing that it is somehow inconsistent with the D.C. Circuit's analysis in *El-Hadad*. *See* ECF No. 31-1 at 15, 24-31. But there is no inconsistency. *Kato*'s admonition that, for the commercial activity exception of the FSIA to apply, the cause of action must be "based upon" some "commercial activity" by the foreign state, is not inconsistent with *El Hadad*, and is further supported by Supreme Court precedent. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993).

7

*El-Hadad* applies when the action is "based upon" the employment relationship. *See Dahman v. Embassy of Qatar*, No. 17-2628, 2018 U.S. Dist. LEXIS 124759, at *11-12 (D.D.C. July 26, 2018). As another court in this District explained, applying *El Hadad*, it is therefore necessary to determine if the employment itself constitutes "commercial activity." *Id.* at *11-13. Indeed, in *El Hadad*, the terms of the employment contract itself were at issue. *El-Hadad v. Embassy of the United Arab Emirates*, No. 96-1943, 2006 U.S. Dist. LEXIS 21491, at *27-35 (D.D.C. Mar. 29, 2006). The instant action is not "based upon" the employment relationship between Plaintiff and the UAE. Plaintiff is patently unable to identify any term in her employment contract on which the claim rests. Instead, she makes inaccurate (and unsupported) assertions about verbal comments allegedly made to her in the course of her employment and upon its termination. *See* ECF No. 31-1 at 7-8.

*Kato* is instructive as a way to determine whether the government is engaged in actions that are "typical of a private party." 360 F.3d at 111.[4] The UAE Embassy Cultural Division does not engage in actions that are typical of a private party, but rather in those typical of a government, just like the U.S. Department of State's USA Study Abroad.

In arguing otherwise, Plaintiff asserts that "any non-profit or private sector philanthropic or educational organization could perform the tasks and achieve the goals" of the Cultural Division. ECF No. 31-1 at 25. That statement is simply wrong. The Cultural Division acts in the best interest of the UAE, and makes its decisions on the basis of what is best for the UAE's national interest, not the best interest of a charity or an educational organization. No private institution can decide what is in a country's national interest. Plaintiff's argument is akin to

---

[4] Plaintiff attempts to distinguish *Kato* by describing facts irrelevant to the determination of whether or not the government entity was engaged in commercial activity. While the plaintiff in *Kato* was a civil servant, the Second Circuit saw that analysis as not determinative and instead looked to whether or not the government's activities were "typical of a private party engaged in commerce." 360 F.3d at 111.

saying that the negotiation of treaties is not a government function, because any private company can negotiate a contract. Likewise, under Plaintiff's argument, the U.S. Secret Service would not be exercising a governmental function because private security services protect high-profile individuals all the time. When the UAE decided who would be granted or denied a scholarship, it did so based on the UAE's national interest, not private interests like a charity or educational organization.

As Plaintiff's claim is not "based upon" any "commercial activity" in which the Cultural Division engages, Plaintiff's request to deny the motion to dismiss on this ground should fail.

> **2. Plaintiff's Overly Rigid Application of *El-Hadad* Fails To Refute the Fact that Plaintiff's Employment Involved Discretionary Duties and that Her Work Was Not a Commercial Activity.**

Plaintiff applies the *El-Hadad* five-factor test to determine whether or not she was a civil servant in a manner that relies heavily on outdated sources and incorrect assertions.

First, Plaintiff relies on nearly two-decades-old UAE briefs in the initial *El Hadad* case, *El-Hadad v. United Arab Emirates*, 216 F.3d 29 (D.C. Cir. 2000), as ostensibly reflective of the UAE's current practices of engaging and retaining its civil service and non-civil service Embassy personnel. *See* ECF No. 31-1 at 17 & n.6. But those practices are not frozen in time. Plaintiff's reliance on outdated briefs in a different case does not adequately support her argument.

Second, Plaintiff incorrectly asserts that all Embassy civil servant contracts must be concluded with the Ministry of Foreign Affairs, and attempts to use this faulty assertion to argue that her contract with the Cultural Division was therefore analogous to the situation in *El-Hadad*. There is no support in *El Hadad* for Plaintiff's bald assertion that the formalities of a contractual relationship of Embassy employees (and, specifically, the contract's signatories) somehow indicate non-civil servant status. Plaintiff ignores, moreover, the fact that *El-Hadad* was a

9

contract-based claim, where the second question was asked in order to assess if his claim was based on his employment contract or on civil service laws. *El-Hadad*, 496 F.3d at 665-66.

Plaintiff's characterization of the third factor is accurate, as prior tenure is not applicable in this case. *See* ECF No. 31-1 at 18. That factor therefore does not support her argument that she is not a civil servant.

Plaintiff tries to skirt the core issue of the fourth factor—the nature of her work at the Cultural Division—by emphasizing that "[c]lerical staff squarely come under the FSIA commercial activity exception." *Id*. This exclusion based on legislative history, however, is expressly applied only to clerical workers, *El-Hadad*, 496 F.3d at 663-64 (citing H.R. REP. NO. 94-1487, at 16 (1976)), and Plaintiff was promoted out of a clerical job years before the events at issue in this case. Plaintiff argues that her duties were clerical by pointing to her prior title of "secretary" and associated job duties many years ago at the inception of her Embassy employment. ECF No. 31-1 at 18-19. But after that initial employment, Plaintiff (as she admits) was promoted to the position of an Employees Affairs (Personnel) Officer, and was no longer serving as a secretary. *Id.* at 6. Plaintiff does not demonstrate that her actions as an administrative officer were clerical in nature, instead simply arguing that others at the Cultural Division performed governmental functions. But just because others were engaged in discretional governmental functions does not mean she was not conducting discretional governmental work as well.

Plaintiff attempts to counter the UAE's showing that, throughout her tenure with the Cultural Division, Plaintiff was employed on an A-2 visa, which is issued to "[d]iplomats and other foreign government officials traveling to the United States to engage solely in official duties or activities on behalf of their national government." ECF No. 30-8, Exhibit F (Visas for

Diplomats and Foreign Government Officials, *available at* https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html); *see also* ECF No. 31-1 at 6. Plaintiff's response is that a holder of an A-2 visa is allowed to "'perform[] *governmental* functions of a commercial nature.'" ECF No. 31-1 at 21 (quoting *Dahman*, 2018 U.S. Dist. LEXIS 124759, at *22). But the court in *Dahman* made that observation when assessing whether a foreign embassy's Chief Accountant performed duties of a commercial nature. *See Dahman*, 2018 U.S. Dist. LEXIS 124759, at *1-2. On those facts, the court found that the accountant's A-2 visa status did not outweigh the other evidence that the nature of his work was commercial. *Id.* at *20-23. That is radically different from this case, where Plaintiff's duties were not of a commercial or financial nature, but rather were integral to the functioning of the Cultural Division and contained discretionary element. *See* ECF No. 30-1 at 16.[5]

      Plaintiff also argues that the UAE could "hire any private, third-party employee" to perform Plaintiff's duties. ECF No. 31-1 at 22. This incorrect assumption drastically mischaracterizes the nature of Plaintiff's work and her responsibilities at the Cultural Division, as she was privy to the actions by high-level, diplomatic employees and their work at the Division. Asserting that a sovereign nation would permit "any private, third-party employee" to be as involved in the day-to-day governmental functions of a country is plainly wrong.

---

[5] Plaintiff concedes that the Embassy did not terminate Plaintiff's A-2 visa (or her medical insurance) after she rejected the latest (fourth) offer to extend her employment contract, *see* ECF No. 30-1 at 7-8, but asserts (with no support) that the Embassy did so only to obtain leverage over Plaintiff and "compel Plaintiff to resign." ECF No. 31-1 at 21 n.8. Not only is this attempt to allege new facts improper, *see Webster*, 318 F. Supp. 3d at 319, but it is also illogical. Plaintiff's resignation of her Embassy position would have eventually led to the termination of her A-2 visa status, since it is predicated on that employment. The fact that the Embassy did not immediately terminate Plaintiff's visa or health insurance reflects the respectful way in which the Embassy treats its employees, and is fundamentally inconsistent with Plaintiff's assertions of alleged mistreatment, both during her employment and upon termination. *See* ECF No. 31-1 at 8.

Perhaps sensing that none of the factors (much less their combination) weighs decidedly in her favor, in Plaintiff's analysis of the fifth factor she proclaims that the Court should take a "renewed interest" in the weight of third-country national citizenship. *Id.* at 20. Instead of explaining the basis for this novel (and unsupported) claim, Plaintiff makes an ironically xenophobic argument, casting unwarranted aspersions upon the Embassy's employment practices apparently because the Embassy employs non-citizens, insinuating that this case somehow suggests a "xenophobic mindset inconsistent with a state granting civil servant status." *Id.* at 21. This unpleaded allegation is not only wholly unsupported; it is offensive. Nor does it bear any relationship to the factors for determining when the FSIA's commercial activity applies. The resort to such tactics illustrates the lack of support for Plaintiff's position.

Plaintiff failed to allege adequately that her employment falls within the commercial activity exception to the FSIA. The UAE's motion to dismiss should be granted.

E.     The DCHRA Claim Should Be Dismissed as a Matter of Law and Plaintiff Fails To Provide a Compelling Argument to the Contrary.

Plaintiff's alleged cause of action under the District of Columbia Human Rights Act ("DCHRA") is improper because, as Plaintiff concedes, at all relevant times she was working at the Embassy's 3522 International Court location, which is indisputably located at the International Chancery Center ("ICC") and squarely on federal property that has been leased to foreign governments.[6] Plaintiff attempts to dodge the holding in *Paul v. United States*, 371 U.S. 245 (1963), by labeling it as "55-year-old authority." ECF 31-1 at 31. Plaintiff does not

---

[6] Plaintiff attempts to confuse the issues by purporting that the U.S. State Department website on which the UAE relies has "conflicting information that calls for discovery on whether the Embassy of the UAE was on federal land that was designated for foreign states." ECF No. 31-1 at 32, n. 11 (citing https://www.state.gov/ofm/property/icc/foreignmissionsaticc/index.htm (last visited Nov.1, 2018), attached hereto as Ex. A. This purported "conflicting information" is based on Plaintiff's misreading of the sentence "[t]he three-story building wing fronts on Reno Road adjacent to the Center." *See* Ex. A. That sentence clearly refers to "Reno Road" being adjacent to the ICC, ***not the Embassy***. In fact, at the top of the webpage Plaintiff cites, the U.S. Department of State makes plainly clear that the Embassy of the United Arab Emirates is **located** *at the International Chancery Center*. *Id.*

contend, however, that *Paul* is no longer good law. *See id.* Indeed, the holding in *Paul* is still good law and makes clear the "jurisdiction of [the] federal government becomes 'exclusive' in federal enclaves. *Paul*, 371 U.S. at 248 (citation omitted).

Plaintiff's reliance on *Sturdza v. United Arab Emirates*, 11 A.3d 251 (D.C. 2011), and on the Foreign Missions Act of 1982 as well as the International Center Act is plainly an attempt to fit a square peg in a round hole. *Sturdza* is wholly inapposite to the present case. That case involved an unlicensed architect operating in an industry that (as Plaintiff concedes) has a clear carve-out within the Foreign Missions Act and the International Center Act. *See* ECF 31-1 at 33, n.12 (arguing that the International Center Act requires foreign government transferees and grantees to comply with local "codes and regulations ***relating to building construction***") (citing *Sturdza*, 11 A.3d at 256 (internal quotation marks omitted)).[7] Plaintiff cites no case law outside of the wholly inapplicable *Sturdza* decision to further her argument that the federal enclave doctrine does not apply here.

Plaintiff also attempts to further her argument by stating that Section 4307 of the Foreign Missions Act provides that Sections 4302, 4303, 4304, or 4305 of the Act are not to be construed to preempt state or municipal law, without any explanation as to what the substance of Sections 4302, 4303, 4304, or 4305 is. *See* ECF 31-1 at 33. A close review of Sections 4302, 4303, 4304, and 4305 demonstrates that Plaintiff's argument is unavailing here. Section 4302 of the Foreign Missions Act provides the definitions of terms used within the Act, and focuses on terms as they relate to real property and utilities. 22 U.S.C. § 4302. Section 4303 of the Foreign Missions Act provides the Authorities of the Secretary of State. *Id.* § 4303. Section 4304 governs the

---

[7] The D.C. Court of Appeals in *Sturdza* answered a question certified to it by the D.C. Circuit. *See* 11 A. 3d at 252-53. Following the answer to the certified question, the D.C. Circuit rejected the architect's multiple appeals against the UAE. *See, e.g.*, *Sturdza v. United Arab Emirates*, 587 Fed. App'x 660 (D.C. Cir. 2014); *Sturdza v. United Arab Emirates*, 727 Fed. App'x 705 (D.C. Cir. 2018).

provision of benefits through the Secretary of State, the surcharge or fees established by the Secretary, as well as the in-kind exchange of properties with foreign governments. *Id.* § 4304. Lastly, Section 4305 governs the acquisition, sale, or disposition of real property of foreign missions. *Id.* § 4305. These provisions have no bearing on the present action, and Plaintiff's misrepresentation of the application of 22 U.S.C. § 4307 is a thinly veiled grasp at straws in an attempt to somehow support her insupportable position that local law applies here.

At bottom, Plaintiff's DCHRA claim should be dismissed because she was working on federal property separate and distinct from the District of Columbia at all relevant times. Her Opposition shows confusion about the issues more than anything else, and she cites to no relevant case law to support her position. This Court should therefore dismiss Plaintiff's DCHRA-based claim.

IV.     CONCLUSION

For the reasons set forth above, as well as those contained in the UAE's opening brief, this Court should GRANT the UAE's Motion to Dismiss Plaintiff's Complaint and Motion to Strike Plaintiff's Jury Demand (ECF No. 30).


Dated: November 6, 2018

                                    Respectfully submitted,

                                    /s/ Igor V. Timofeyev
                                    Scott M. Flicker (DC Bar No. 425825)
                                    Igor V. Timofeyev (DC Bar No. 998291)
                                    Kenneth M. Willner (DC Bar No. 415906)
                                    PAUL HASTINGS LLP
                                    875 15th Street, N.W.
                                    Washington, D.C.  20005
                                    Telephone: (202) 551-1792

Facsimile: (202) 551-1705
scottflicker@paulhastings.com
igortimofeyev@paulhastings.com
kenwillner@paulhastings.com

*Counsel for the Specially-Appearing Defendants
the United Arab Emirates and
the Embassy of the United Arab Emirates*

15

## CERTIFICATE OF SERVICE

I, hereby certify that on the 6th day of November 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Sylvia J. Rolinski , Esq.
Rolinski Law Group, LLC
14915 River Road
Potomac, MD 20854
Tel. (301) 987-0202
Fax (301) 263-7100
sjr@rolinski.com

Daniel K. Gebhardt , Esq.
Solomon Law Firm, PLLC
1025 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel. (866) 833-3529
Fax (202) 688-1896
dgebhardt@fedemploylaw.com

/s/ Igor V. Timofeyev
Igor V. Timofeyev